**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Johnnie C. SULLIVAN, Defendant–Appellant.**

**No. 00–8012.**

United States Court of Appeals, Tenth Circuit.

March 20, 2001.

1250

Jill M. Wichlens, Assistant Federal Public Defender, (Michael G. Katz, Federal Public Defender with her on the briefs), Denver, CO, appearing for appellant.

Meghan S. Skelton (Alan Hechtkopf with her on the briefs), Tax Division, Department of Justice, Washington, DC, appearing for appellee.

Before KELLY, ANDERSON, and BRISCOE, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Johnnie Sullivan was convicted following a jury trial on three counts of willful failure to file a tax return, in violation of 26 U .S.C. § 7203. He was sentenced on all three counts pursuant to the Sentencing Guidelines in effect at the time of sentencing, although the applicable tax offense guidelines had been amended after Mr. Sullivan had committed two of the three counts of willful failure to file. He argues on appeal that the application of the post-amendment guidelines to all three counts violates the *ex post facto* clause because it resulted in a higher guideline range than would the application of the pre-amendment guidelines to all three counts or the pre-amendment guidelines to the pre-amendment counts and the post-amendment guidelines to the post-amendment

count. Mr. Sullivan also argues the district court erred in using a 20%-of-gross-income figure to calculate the tax loss in this case. Finally, he argues in supplemental briefing filed just prior to oral argument of this case that the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) invalidates his sentence because certain sentencing factors were not submitted to the jury. Because we conclude that the application of the post-amendment guidelines to pre-amendment conduct violates the *ex post facto* clause, but we find no error in the method used to calculate the relevant tax loss, we affirm in part and reverse and remand in part. We reject Mr. Sullivan's *Apprendi* argument.

## BACKGROUND

Mr. Sullivan was the owner and operator of Sullivan's Rat Hole Drilling, a sole proprietorship that drilled holes for oil excavation. Mr. Sullivan stipulated that Sullivan's Rat Hole Drilling earned gross receipts of $606,000 in 1991, $564,765 in 1992, and $517,253 in 1993. He failed to file tax returns for the years 1991, 1992 and 1993. The jury convicted him on all three counts of willful failure to pay.

The district court used the November 1, 1998, edition of the sentencing guidelines to calculate Mr. Sullivan's sentence. Pursuant to U.S.S.G. § 3D1.2(d), the three counts were grouped and the initial base offense level was calculated by reference to the total aggregate amount of loss.[1] The court determined that Mr. Sullivan's total gross income for the three year period was $1,688,017 and that, pursuant to U.S.S.G. §§ 2T1.1(a)(2) and 2T1.1(c)(2), the tax loss was 20% of that figure, or $337,603. This gave Mr. Sullivan a base offense level of 17. After a two-level enhancement for sophisticated concealment,

pursuant to § 2T1.1(b)(2), Mr. Sullivan's total offense level was 19. This resulted in a sentencing range of thirty to thirty-seven months. The court sentenced him at the low end of the range—thirty months—amounting to ten months on each count of conviction, to run consecutively. Mr. Sullivan did not object at the time of sentencing to the court's use of the 1998 sentencing guidelines.

## DISCUSSION

 Mr. Sullivan concedes that, because his trial counsel did not object to the application of the November 1, 1998, guidelines to his sentence, we review his sentence under the guidelines only for plain error. *See United States v. Gilkey*, 118 F.3d 702, 704 (10th Cir.1997); Fed. R.Crim.P. 52(b). The plain error standard applies when an *ex post facto* claim is not raised at sentencing. *See United States v. Massey*, 48 F.3d 1560, 1568 (10th Cir. 1995). "To constitute plain error, the error must have been both 'obvious and substantial.... An error is substantial if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Gerber*, 24 F.3d 93, 95 (10th Cir.1994) (quoting *United States v. Brown*, 996 F.2d 1049, 1053 (10th Cir. 1993)). An *ex post facto* application of a sentencing guideline which disadvantages the defendant can amount to plain error. *United States v. Orr*, 68 F.3d 1247, 1252 (10th Cir.1995). "We review de novo questions of law regarding application of the sentencing guidelines, and review for clear error the district court's factual findings." *United States v. Spencer*, 178 F.3d 1365, 1367 (10th Cir.1999).

### I. Ex Post Facto Argument

The sentencing guidelines applicable to tax offenses were amended effective No-

---

1. Section 3D1.1(a) provides for the grouping of "Closely Related Counts" as specified in § 3D1.2. Section 3D1.2, in turn, provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Among such counts "involving sub-

stantially the same harm" are counts where the "offense level is determined largely on the basis of the total amount of harm or loss." Offenses encompassed by § 2T1.1, willful failure to file tax returns, are specifically included as counts which must be grouped.

vember 1, 1993. The amendment increased the base offense level for failure to file convictions. Mr. Sullivan was convicted of failing to file tax returns on April 15, 1992, April 15, 1993, and April 15, 1994. Thus, two of the counts related to conduct occurring before the guidelines amendment and one count related to conduct occurring after the amendment. His total offense level under the pre-amendment guidelines was 15. Under the post-amendment guidelines, it was 19.

■ The Sentencing Guidelines contain the "one-book rule": "The Guidelines Manual in effect on a particular date shall be applied in its entirety. The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual." U.S.S.G. § 1B1.11(b)(2), p.s. We, like virtually every other circuit, have approved use of the one-book rule. *See United States v. Nelson*, 36 F.3d 1001, 1004 (10th Cir.1994). The Guidelines also state that, in general, a sentencing court must apply the guidelines in effect at the time of sentencing, *see* U.S.S.G. § 1B1.11(a), p.s., unless such application would violate the *ex post facto* clause. *See* U.S.S.G. § 1B1.11(b)(1), p.s.; *see also United States v. Svacina*, 137 F.3d 1179, 1186 (10th Cir.1998). "The Ex Post Facto Clause is violated if the court applies a guideline to an event occurring before its enactment, and the application of that guideline disadvantages the defendant 'by altering the definition of criminal conduct or increasing the punishment for the crime.'" *Id.* (quoting *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997)).

■ Additionally, in 1993, the Sentencing Commission issued a policy statement making explicit that the one-book rule applies to situations involving multiple counts: "[i]f the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." U.S.S.G. § 1B1.11(b)(3), p.s. The commentary to that provision states that the revised edition is to be applied "even if the revised edition results in an increased penalty for the first offense." U.S.S.G. § 1B1.11(b)(3), comment. (backg'd.).[2] That commentary also explains why the Commission perceives no *ex post facto* problem with § 1B1.11(b)(3):

> Because the defendant completed the second offense after the amendment to the guidelines took effect, the *ex post facto* clause does not prevent determining the sentence for that count based on the amended guidelines. For example, if a defendant pleads guilty to a single count of embezzlement that occurred after the most recent edition of the Guidelines Manual became effective, the guideline range applicable in sentencing will encompass any relevant conduct (*e.g.*, related embezzlement offenses that may have occurred prior to the effective date of the guideline amendments) for the offense of conviction. The same would be true for a defendant convicted of two counts of embezzlement, one committed before the amendments were enacted, and the second after. In this example, the *ex post facto* clause would not bar application of the amended guideline to the first conviction; a contrary conclusion would mean that such defendant was subject to a lower guideline range than if convicted only of the second offense.

*Id.* Mr. Sullivan argues that the application of the November 1, 1998, guidelines to all three counts, consistent with § 1B1.11(b)(3), violates the *ex post facto* clause. Both parties agree that application of the amended guidelines to Mr. Sul-

---

**2.** "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

livan's pre-amendment conduct (the first two counts of conviction), or to all three counts, disadvantaged Mr. Sullivan by subjecting him to a higher sentencing range.

■ As both parties acknowledge, courts which have addressed the question whether sentences consistent with § 1B1.11(b)(3) violate the *ex post facto* clause are divided. Several have held that, consistent with the Sentencing Commission's view, sentences imposed in accordance with § 1B1.11(b)(3) do not violate the *ex post facto* clause. *See United States v. Lewis,* 235 F.3d 215, 217 (4th Cir.2000) ("We conclude that the guideline provision of which [defendant] complains, U.S.S.G. § 1B1.11(b)(3), does not violate the Ex Post Facto Clause."); *United States v. Vivit,* 214 F.3d 908, 919 (7th Cir.) (holding that the guidelines "provide notice to criminals that engaging in ongoing fraudulent behavior involving the same type of harm risks grouping of convictions, which because of the one-book rule, will all be sentenced according to the Guidelines in effect when the latest conduct occurred."), *cert. denied,* —— U.S. ——, 121 S.Ct. 388, 148 L.Ed.2d 299 (2000); *United States v. Kimler,* 167 F.3d 889, 893 (5th Cir.1999) (same); *United States v. Bailey,* 123 F.3d 1381, 1404–05 (11th Cir.1997) (same); *United States v. Cooper,* 35 F.3d 1248 (8th Cir.) (same), *vacated,* 514 U.S. 1094, 115 S.Ct. 1820, 131 L.Ed.2d 742 (1995), *reinstated,* 63 F.3d 761 (8th Cir. 1995), *cert. denied,* 517 U.S. 1158, 116 S.Ct. 1548, 134 L.Ed.2d 650 (1996); *United States v. Regan,* 989 F.2d 44, 48 (1st Cir. 1993) (same); *United States v. Tucker,* 982 F.Supp. 1309 (N.D.Ill.1997) (same).

Two circuits, however, and one district court, have held that such sentences violate the *ex post facto* clause. In *United States v. Bertoli,* 40 F.3d 1384 (3d Cir. 1994), the defendant was convicted on two counts of obstruction of justice, one occurring in 1990 and one in 1992. The district court grouped the counts for sentencing purposes and applied a 1991 amendment which increased the defendant's sentence. It held that, although one count involved conduct occurring in 1990 (prior to the

amendment of the guideline), because that count was grouped with conduct occurring in 1992 (post-amendment), application of the amended guideline did not violate the *ex post facto* clause. The Third Circuit disagreed: "The fact that various counts of an indictment are grouped cannot override ex post facto concerns." *Bertoli,* 40 F.3d at 1404. The court did not, however, reject application of the one-book rule. Rather, the court held that, when *ex post facto* concerns arise, the sentencing court can apply the one-book rule without violating the *ex post facto* clause by applying the pre-amendment guidelines to all counts.

The Ninth Circuit reached a similar conclusion, though with a slightly different solution to the problem, in *United States v. Ortland,* 109 F.3d 539 (9th Cir.1997). In *Ortland,* the defendant was convicted on five counts of mail fraud, four of which involved conduct occurring before a November 1, 1989, amendment changing the way loss is calculated in a fraud case. The Ninth Circuit held that application of § 1B1.11(b)(3) to sentence the defendant on all five counts under the amended guideline violated the *ex post facto* clause. But rather than applying the pre-amendment guidelines to all counts, the Ninth Circuit held the district court must apply the pre-amendment guidelines to the counts involving conduct occurring prior to the amendment, and the post-amendment guidelines to conduct occurring after the amendment. As the *Ortland* court explained:

> Application of the policy statement [§ 1B1.1.11(b)(3) ] in this case would violate the Constitution; its application would cause [defendant's] sentence on earlier, completed counts to be increased by a later Guideline. Moreover, the Commission's explanation is not entirely logical. The harm caused by the earlier offenses can be counted in sentencing the later one. That does not mean that the punishment for the earlier offenses themselves can be increased, simply because the punishment for the later one can be. In fact, were the later count to

fall at some time after sentencing, all that would remain would be the earlier sentences, which would be too long. *Id.* at 547. *Accord, United States v. Johnson,* Nos. 97–CR–206, 98–CR–160, 1999 WL 395381 (June 4, 1999), *aff'd, United States v. Johnson,* 221 F.3d 83 (2d Cir. 2000).[3]

After careful consideration, we elect to follow the reasoning of the Third and Ninth Circuits and conclude that the application of guidelines policy statement § 1B1.11(b)(3) to the first two of Mr. Sullivan's willful failure to file tax counts violates the *ex post facto* clause and is plain error requiring us to vacate his sentence.

Mr. Sullivan was charged for and convicted of three separate and discreet tax offenses. Although the three offenses were indisputably related, they nonetheless did not constitute a continuing offense. Thus, it is irrelevant that we have held that "when a crime involves a continuing violation, application of a law enacted after the crime begins does not implicate the ex post facto clause." *United States v. Boyd,* 149 F.3d 1062, 1068 (10th Cir.1998).

▮ As indicated above, the central concern of the *ex post facto* clause is fair notice to a defendant that the punishment for a crime has been increased from what it was when the crime was committed: "[o]ne function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones,* 529 U.S. 244, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236 (2000). Mr. Sullivan was on notice when he committed

his first two discrete tax offenses that the Sentencing Guidelines then in effect would determine his sentence. He was simply not on notice that his sentence for those two offenses would be calculated under an amended guideline enacted after he completed those crimes. By contrast, it is fair to conclude that he *was* on notice when he committed his third discrete tax offense that the guideline applicable to such an offense had been amended and the punishment increased. We agree with the Third Circuit that the grouping rules "cannot override ex post facto concerns." *Bertoli,* 40 F.3d at 1404. While Congress and/or the Commission can provide for an enhancement of a sentence because of prior violations, that is not what Mr. Sullivan experienced here. Rather, the punishment for his first two tax violations was actually retroactively increased. We therefore conclude that the application of § 1B1.11(b)(3) to sentence Mr. Sullivan for all counts under the amended guidelines violates the *ex post facto* clause.

▮ However, we prefer the resolution endorsed by the Ninth Circuit in *Orland* to that of the Third Circuit in *Bertoli.* We therefore remand this case for resentencing, and we direct the district court to apply the pre-amendment guideline to Mr. Sullivan's two pre-amendment failure to file convictions and the post-amendment guideline to Mr. Sullivan's post-amendment conviction. Although such a resolution requires that the one-book rule not apply in a case such as this, it more narrowly addresses the *ex post facto* problem.[4]

---

**3.** Although the Second Circuit affirmed the sentence imposed in *Johnson,* it declined to entertain the government's cross-appeal and the Second Circuit did not explicitly address the district court's *ex post facto* analysis. The Second Circuit has, in another case, recognized "the possibility that the one-book rule might not be fully applicable to sentences based on multiple counts." *United States v. Santopietro,* 166 F.3d 88, 96 (2d Cir.1999). The *Santopietro* court examined the disagreement between circuits on the validity of § 1B1.11(b)(3), but declined to address the issue in the case before it.

**4.** Our decision in *United States v. Nelson,* 36 F.3d 1001, 1004 (10th Cir.1994), in which we "join[ed] other circuits in adopting the 'One Book' rule," does not compel a different result. In *Nelson,* the defendant pled guilty to a conspiracy and was sentenced under the 1992 guidelines which were in effect at the time of sentencing. He argued the application of those guidelines, rather than the 1988 guidelines in effect when the offense conduct was committed, violated the *ex post facto* clause. The defendant also argued we should, in effect, apply both the 1992 and 1988 guidelines to calculate his sentence. We rejected such

## II. Calculation of Loss

Mr. Sullivan also argues the district court erred in the way it calculated the tax loss caused by his failure to file. While we have already determined that this case must be remanded for resentencing, we address this issue because, presumably, the issue of loss calculation will arise again on remand.

Prior to the 1993 guideline amendments at issue in this case, U.S.S.G. § 2T1.2(a) (1992) governed the calculation of tax loss for the willful failure to file a tax return. It defined tax loss as "the total amount of tax that the taxpayer owed and did not pay, but, in the event of a failure to file in any year, not less than 10 percent of the amount by which the taxpayer's gross income for that year exceeded $20,000." U.S.S.G. § 2T1.2(a)(2) (1992). The commentary explained as follows: "An alternative measure of the tax loss, 10 percent of gross income in excess of $20,000, has been provided because of the potential difficulty of determining the amount of tax the taxpayer owed. It is expected that this alternative measure generally will understate the amount of tax owed." U.S.S.G. § 2T1.2, comment. (backg'd.).

 Following the 1993 amendments, U.S.S.G. § 2T1.1(c)(2) governs the calculation of tax loss in such cases. It provides in part:

(2) If the offense involved failure to file a tax return, the tax loss is the amount of the tax that the taxpayer owed and did not pay.

*Note:* If the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income ... less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made.

dual application, noting that he "may not select piecemeal from the 1988 and 1992 Guidelines to come up with the most advantageous combination of provisions from the two books, but must instead be sentenced under one Guidelines Manual." *Id.* But we also explicitly found no *ex post facto* problem:

The commentary to § 2T1.1 states that the "presumption" of § 2T1.1(c)(2) is "to be used unless the government or defense provides sufficient information for a more accurate assessment of the tax loss." U.S.S.G. § 2T1.1, comment. (n.1). That commentary further recognizes that there may be situations where the tax loss "may not be reasonably ascertainable." *Id.* "[A]lthough the government bears the burden at sentencing of proving the amount of tax loss flowing from the defendant's illegal acts, neither the government nor the court has an obligation to calculate the tax loss with certainty or precision." *Spencer,* 178 F.3d at 1368 (citations omitted).

At trial, the government and Mr. Sullivan entered into a stipulation that Sullivan's Rat Hole Drilling had the following gross business receipts: $606,000 in 1991, $564,765 in 1992 and $517,253 in 1993. They also stipulated that the business paid the following expenses: $424,200 in 1991, $395,336 in 1992 and $362,007 in 1993. *See* R. Vol. 1 at Doc. 47. The stipulation provided that it "is for purposes of the criminal trial only, and does not bind either party in any post trial matters or any civil proceeding." *Id.*

In the presentence report, the probation officer determined that the tax loss was $337,603: "[p]ursuant to U.S.S.G. § 2T1.1(c)(2), the tax loss for the years 1991 through 1993 is 20% of [Mr. Sullivan's] $1,688,017.20 gross income or $337,603.44." PSR at 7, R. Vol. 8. Mr. Sullivan objected to the PSR's use of the 20% figure because it "failed to include allowable trade and business deductions." Addendum to PSR (Objections) at i, R. Vol. 8. The probation officer responded that the PSR's tax loss figure should be used because "the defendant has failed to demonstrate that the tax loss information

"the court's use of the 1992 Guidelines rather than the 1988 Guidelines did not disadvantage [defendant] because he received the same punishment under either version of the Guidelines." *Id.* Thus, we have implicitly acknowledged that the one-book rule may not "trump" the *ex post facto* clause.

in the Presentence Report is inaccurate."
*Id.* at ii.

At sentencing, the government introduced as an exhibit the gross income figure to which the parties stipulated at trial. Mr. Sullivan objected that it "shows only gross income." Tr. of Sentencing at 32, R. Vol. 7. The government's response was as follows:

> As far as the deductions, again I will state that the guidelines say very clearly that you take 20 percent of the gross income unless you've got better figures. The defendant destroyed his records. The defendant would not provide information as far as his deductions. And although the Government has records of what expenses were and those records were turned over to the defense, there's been no attempt in the last four months to sit down and—everything was intermingled—personal expenses, business expenses—as to what was paid for how, what was paid for in cash. There's simply no way of determining that with any degree of accuracy.
>
> And therefore, the Court is forced to fall back on the flat 20 percent figure, which is probably not a perfect number but it is the best we can do in this case and that's because of the defendant's lack of cooperation.

*Id.* at 40. After hearing argument from both sides on the issue, the court held it would follow the presumptive 20% figure, using the stipulated gross income figures: "[A]t this point I don't believe the Court has before it information that assures the Court that a more accurate determination of the tax loss can be made ... in this matter. Certainly I don't have the materials before me that would lead to that nor is there any present ability to arrive at that kind of calculation." *Id.* at 50.

 We affirm the district court's use of the presumptive 20% figure. The guidelines state that the tax loss in a failure to file offense is 20% of the gross income "*unless* a more accurate determination of the tax loss can be made." U.S.S.G. § 2T1.1(c)(2) (emphasis added).[5] After listening to arguments and reviewing exhibits and proposed exhibits on the matter, the court found that it could not determine a more accurate tax loss figure. Bearing in mind that we review the court's factual findings for clear error, and that we must give " 'due deference' to the district court's application of the guidelines to the facts," *Spencer,* 178 F.3d at 1367 (quoting *United States v. Henry,* 164 F.3d 1304, 1310 (10th Cir.), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2381, 144 L.Ed.2d 784 (1999)), we perceive no clear error in the district court's computation of tax loss. Of course, on remand, the district court will have to calculate tax loss under both the pre- and post-amendment guidelines. We simply hold that, in the absence of additional evidence from which the court may determine the relevant tax loss with more accuracy, we perceive no error in its use of the presumptive figures.

## III. Effect of *Apprendi*

 In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 120 S.Ct. at 2362–63. We have not yet ruled on whether *Apprendi* extends to sentencing guideline factors. Mr. Sullivan concedes that the law in this circuit currently states that sentencing guideline factors need not be alleged in the indictment or found by the jury. *See United States v. Frederick,* 897 F.2d 490, 491–93 (10th Cir.1990). Other circuits have held that *Apprendi* does not apply to sentencing factors that increase a defendant's guideline range but do not increase the statutory maximum. *See Lewis,* 235 F.3d at 217; *United States v. Hernandez–Guardado,* 228 F.3d 1017 (9th Cir.

---

5. The pre-amendment guidelines acknowledge the necessity of providing a presumptive figure because of the "potential difficulty" in determining the amount of tax owed. Moreover, they expect that the use of such a figure will be in the taxpayer's favor.

2000); *United States v. Corrado,* 227 F.3d 528 (6th Cir.2000); *United States v. Meshack,* 225 F.3d 556 (5th Cir.2000), *petition for cert. filed,* (U.S. Nov. 26, 2000) (No. 00–7246); *United States v. Aguayo–Delgado,* 220 F.3d 926 (8th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 600, 148 L.Ed.2d 513 (2000). We agree with those circuits. Since the tax loss calculation and two-level increase for sophisticated concealment did not increase Mr. Sullivan's sentence beyond the statutory maximum of 12 months for each count of failure to file, his sentence does not run afoul of the rule in *Apprendi.*

## CONCLUSION

For the foregoing reasons, we AFFIRM in part and REVERSE and REMAND for further proceedings consistent with this opinion.

BRISCOE, Circuit Judge, concurring and dissenting:

I respectfully concur in part and dissent in part. I concur in the majority's resolution of the calculation of loss and *Apprendi* issues, and dissent from the conclusion that the district court's application of post-amendment guidelines to pre-amendment conduct violates the ex post facto clause.

Six circuits have either expressly upheld the validity of § 1B1.11(b)(3) against ex post facto challenges or have approved and applied the basic concept underlying that section. In *United States v. Cooper,* 35 F.3d 1248 (8th Cir.), *vacated,* 514 U.S. 1094, 115 S.Ct. 1820, 131 L.Ed.2d 742 (1995), *reinstated,* 63 F.3d 761 (8th Cir. 1995), defendant was convicted of various firearms violations, some occurring prior to 1991 amendments increasing the applicable base offense levels, and some occurring after those amendments.[1] The district court sentenced him under the amended guidelines for all counts of conviction, and the Eighth Circuit affirmed. The court first observed that " 'central to

the ex post facto prohibition is a concern for the "lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." ' " *Id.* at 1250 (quoting *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981))). The court then concluded that the requisite notice was provided by the 1991 amendments:

> At the time [defendant] elected to commit the third firearms violation he was clearly on notice of the 1991 amendments to the Sentencing Guidelines and the fact that they increased the offense levels for the firearm crimes in question and required the aggregation of firearms in Counts I, II and IV. In our view, [defendant] had fair warning that commission of the January 23, 1992, firearm crime was governed by the 1991 amendments that provided for increased offense levels and new grouping rules that considered the aggregate amount of harm.

*Id.* The court thus concluded that "it was not the amendments to the Sentencing Guidelines that disadvantaged [defendant], it was his election to continue his criminal activity after the 1991 amendments became effective." *Id.* Further, the court observed it is well established that the completion date of a conspiracy determines which version of the guidelines applies, and "a common scheme or plan by an individual and the same course of conduct by an individual are the unilateral equivalents to the continuing group offense of conspiracy." *Id.* at 1251 (internal quotation omitted).

The court therefore held that the amended version of the guidelines applied to all counts, including those relating to conduct occurring prior to the amend-

---

1. The effective date of § 1B1.11(b)(3) was November 1, 1993, after the defendant in *Cooper* was sentenced but before the Eighth Circuit issued its opinion on appeal. Thus, *Cooper* is one of the cases which did not expressly apply § 1B1.11(b)(3), but it sentenced defendant in a manner completely consistent with that section.

ments. "To hold otherwise could lead to the anomalous result that a particular defendant could be subject to a lower sentence if convicted of multiple offenses spanning a revision of the Sentencing Guidelines, than if convicted of the singular last offense after the revision of the Sentencing Guidelines." *Id.* at 1252.

The Eleventh Circuit subsequently agreed with the Eighth Circuit, following essentially the same reasoning:

> [T]he one book rule, together with the Guidelines grouping rules and relevant conduct, provide that related offenses committed in a series will be sentenced together under the Sentencing Guidelines Manual in effect at the end of the series. Thus, a defendant knows, when he continues to commit related crimes, that he risks sentencing for all of his offenses under the latest, amended Sentencing Guidelines Manual. Analogous to a continuous criminal offense, like conspiracy, the one book rule provides notice that otherwise discrete criminal acts will be sentenced together under the Guidelines in effect at the time of the last of those acts.

*United States v. Bailey,* 123 F.3d 1381, 1404–05 (11th Cir.1997). The court concluded that "[defendant] had fair notice that continuing his crimes in operating his firearms business subjected him to the amended Sentencing Guidelines in effect when he committed the last of the crimes for which he was convicted." *Id.* at 1407. *Accord, United States v. Lewis,* 235 F.3d 215, 218 (4th Cir.2000) ("We conclude that the guidelines provision of which Lewis complains, U.S.S.G. § 1B1.11(b)(3), does not violate the Ex Post Facto Clause."); *United States v. Kimler,* 167 F.3d 889, 893 (5th Cir.1999) ("[W]here a sentencing court groups offenses committed before a change in the sentencing guidelines with offenses after the amendment, and then applies the amended guideline in determining a defendant's appropriate sentence, the Ex Post Facto Clause is not implicated."); *United States v. Vivit,* 214 F.3d 908, 919 (7th Cir.) (holding that the guidelines "provide notice to criminals that engaging in ongoing fraudulent behavior involving the same type of harm risks grouping of convictions, which because of the one-book rule, will all be sentenced according to the Guidelines in effect when the latest conduct occurred"), *cert. denied,* —— U.S. ——, 121 S.Ct. 388, 148 L.Ed.2d 299 (2000); *United States v. Regan,* 989 F.2d 44, 48 (1st Cir.1993) (in a pre § 1B1.11(b)(3) case, holding that defendant convicted of 55 counts of embezzlement, some occurring before and some after a guideline amendment increasing base offense levels, was properly sentenced on all counts under the amended guideline).

In a district court case involving virtually the identical tax violation as this case (willful failure to file tax returns for the years 1990 through 1994) and the identical ex post facto argument arising from sentencing the defendant under the post 1993 guideline amendments, the court found no ex post facto problem. *United States v. Tucker,* 982 F.Supp. 1309 (N.D.Ill.1997). After examining the various circuit court decisions written to date, the *Tucker* court concluded:

> The Court finds the reasoning of the First, Eighth, and Eleventh Circuits more persuasive than that of the Ninth Circuit. The Court respectfully declines to follow *Ortland* because it fails to address the resulting anomaly recognized by the Commission and so clearly exhibited by the facts of this case: if the tax losses are divided into two groups as Defendant and the Ninth Circuit suggest, his sentencing range for all counts would be lower than the sentencing range that would be imposed had Defendant only pled and been sentenced to the last two counts. Under the *Ortland* analysis, Defendant would be subject to a sentencing range of ten to sixteen months for all five counts. Had Defendant only pled and been sentenced to the last two counts, he would be subject to a sentencing range of twelve to eighteen months because the 1990 through 1992 losses would be considered relevant conduct. This Court does not expect that the Seventh Circuit would agree

with an analysis that results in less time for more crime.

*Id.* at 1317.[2]

I would follow the reasoning of the Eighth, Eleventh, Fourth, Fifth, Seventh and First Circuits and conclude that the application of guidelines policy statement § 1B1.11(b)(3) to all of Sullivan's willful failure to file tax counts does not violate the ex post facto clause. As indicated above, the central concern of the ex post facto clause is fair notice to a defendant that the punishment for a crime has been increased from what it was when the crime was committed. Sullivan was on notice even when he committed his first two tax offenses that the guidelines would determine his base offense level from the total tax loss occurring from all years in which he failed to pay taxes. Moreover, the grouping rules and the relevant conduct provisions gave him notice that his three consecutive failures to file would be considered part of the same course of conduct and would collectively determine his sentence.[3] As the Seventh Circuit observed, "[t]he grouping rules, enacted in 1987, provide warning to criminals that completing another criminal offense similar to one committed previously places them in peril of sentencing under a revised version of the Guidelines." *Vivit,* 214 F.3d at 919. When Sullivan committed his last failure to file, post-amendment, he was on notice that losses from his first two failures to file would either be grouped with his latest offense or be considered as relevant conduct, and that the penalty for his grouped tax offenses had been increased.

I further agree with the Eighth and Eleventh Circuits that, while failure to file a tax return is not a continuing offense even if committed in successive years, a series of such failures to file is the "same course of conduct" under the guidelines.

The "same course of conduct" is analogous to a continuing offense like conspiracy, the ending date of which determines the applicable sentencing guidelines. Finally, like those courts, I am also persuaded by the Commission's recognition of the anomaly that results if the pre-amendment guidelines were applied to all of Sullivan's counts of conviction: he "could be subject to a lower sentence if convicted of multiple offenses spanning a revision of the Sentencing Guidelines, than if convicted of the singular last offense after the revision of the Sentencing Guidelines." *Cooper,* 35 F.3d at 1252. I therefore would conclude that the application of § 1B1.11(b)(3) to sentence Sullivan for all counts under the amended guidelines did not violate the ex post facto clause. I would affirm the district court's ruling in all regards.

---

2. The district court correctly predicted that the Seventh Circuit would not follow the *Ortland* analysis. *See Vivit,* 214 F.3d at 919.

3. In the commentary to the relevant conduct provisions of the guidelines, the Commission's discussion of "same course of conduct" includes the following example: "a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals." U.S.S.G. § 1B1.3, comment. (n.9(B)).